**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**Savannah Division**

| | |
|---|---|
| Jane Doe,<br><br>Plaintiff,<br>v.<br><br>HLBMA LLC (formerly known as HL-GA BATTERY COMPANY LLC), and CHOL HYUN PARK,<br><br>Defendants, | Civil Action No.:<br>4:26-cv-343<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Jane Doe ("Plaintiff"), by and through her undersigned counsel, brings this action against Defendants HLBMA LLC (formerly known as HL-GA Battery Company LLC) ("HLBMA" or the "Company") and Chol Hyun Park ("Park") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from unwelcome sexual advances and physical contact directed at Plaintiff by Park, who supervised her work at HLBMA's Ellabell, Georgia facility, and the adverse treatment and deficient response that followed her rejection of his advances and her complaints to management.

2. From approximately June through July 2025, Park subjected Plaintiff to unwanted kissing attempts, unwelcome physical contact, repeated pursuit after work, unwanted appearances near her home, sexualized comments, and pressure to reciprocate his romantic

or sexual interest. After she rejected these advances, she experienced hostility, disparaging remarks, work interference, and an involuntary reassignment within her team.

3. Plaintiff reported the misconduct to her team leader and other managers, then to Human Resources ("HR"). Although the Company eventually transferred her to a separate department at her request, it did not adequately address her concerns about the preceding treatment and subsequently sought her signature on an investigation-closure document that she repeatedly disputed as inaccurate.

4. Plaintiff brings claims against HLBMA under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., for sex-based hostile work environment, sex discrimination, and retaliation. She also brings claims against Park individually under Georgia law for battery, assault, intrusion upon seclusion, and intentional infliction of emotional distress.

## JURISDICTION AND VENUE

5. This Court has original subject-matter jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).

6. The Court has supplemental jurisdiction over Plaintiff's related Georgia-law claims against Park under 28 U.S.C. § 1367(a) because those claims arise from the same common nucleus of operative facts as the federal claims.

7. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practices occurred in the State of Georgia, specifically at HLBMA's facility in Ellabell, Bryan County, Georgia. Title VII expressly permits an action to be brought in any judicial district within the State where the alleged unlawful employment practice occurred.

8. This Court has personal jurisdiction over HLBMA because HLBMA operates the facility in Georgia where Plaintiff was employed, and Plaintiff's claims arise out of the employment relationship and alleged unlawful employment practices at that facility. This Court also has personal jurisdiction over Defendant Park because he personally engaged in the conduct underlying Plaintiff's claims in Georgia, thereby purposefully availing himself of the privilege of conducting activities within the State of Georgia, and Plaintiff's claims against him arise out of that conduct.

## PARTIES

9. Plaintiff Jane Doe is an individual and a resident of the State of West Virginia. During the events alleged herein, Plaintiff was employed by HLBMA and worked at its facility in Ellabell, Bryan County, Georgia.

10. Defendant HLBMA LLC is, upon information and belief, a limited liability company doing business in Georgia that operated the battery manufacturing facility located at or near 1 LG Road, Ellabell, Georgia 31308. HLBMA was formerly known as HL-GA Battery Company LLC. At all relevant times, it was an "employer" with at least 15 employees within the meaning of Title VII.

11. Defendant Chol Hyun Park was, at the relevant times, a supervisory employee who exercised day-to-day work authority over Plaintiff within HLBMA's Cell Equipment Technology Team. Park is named solely in his individual capacity on the Georgia-law tort claims; Plaintiff does not assert Title VII claims against him individually.

12. At relevant times, Hyungmook Jung ("Jung") served as Plaintiff's team leader, and HLBMA's management and HR personnel—including Sabrina Vasher, Jaeho Lee, and

department head Junhong Min—acted in the course of their managerial responsibilities for HLBMA.

## ADMINISTRATIVE EXHAUSTION AND TIMELINESS

13. On May 5, 2026, Plaintiff filed a verified Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 415-2026-01641, naming HL-GA Battery Company LLC and alleging sex discrimination, sexual harassment, a hostile work environment, and retaliation. Her supporting statement described the conduct beginning in June 2025 and continuing through the Company's handling of the matter in November 2025.

14. On August 25, 2026, the EEOC issued a Determination and Notice of Rights stating that it would not proceed further with its investigation and making no determination on the merits of the charge. This action is commenced within 90 days of Plaintiff's receipt of that Notice.

15. Among other matters, the Charge described the Company's November 2025 requests that Plaintiff sign an investigation-closure document attributing the end of the investigation to her alleged refusal to participate, notwithstanding her repeated requests for accurate language and the Company's acknowledgment that she had requested preventive measures and protection against retaliation.

16. In the alternative, and to the extent the Company contends that the administrative charge was filed outside the 180-day period as to any Title VII conduct, Plaintiff invokes equitable tolling to the extent permitted by law. The events alleged herein

caused significant anxiety, trauma-related symptoms, and impaired concentration and functioning; those effects substantially impeded Plaintiff's ability to organize and communicate the detailed factual chronology that she was attempting to prepare to pursue administrative relief.

17. Plaintiff sought legal advice in or about November 2025 and continued attempting to prepare an account of the misconduct. During this period, Plaintiff experienced significant trauma-related symptoms that impaired her concentration and ability to organize and communicate the events underlying her claims. Although she had sought legal advice and intended to pursue legal action, she repeatedly struggled to complete the factual chronology requested in connection with her claims. Her symptoms persisted while she attempted to prepare that account.

18. Plaintiff continued pursuing her claims, prepared and transmitted a more detailed chronology in April 2026, and filed her EEOC Charge on May 5, 2026. Plaintiff alleges that her resulting impairment directly contributed to the filing delay and that she acted with reasonable diligence under the circumstances.

## **FACTUAL ALLEGATIONS**

*Employment and Supervisory Relationships*

19. HLBMA hired Plaintiff on or about August 19, 2024, as an Equipment Engineer on its Cell Equipment Technology Team at its Ellabell facility. She worked primarily with Activation equipment and developed significant experience with that equipment and its operational history.

20. Park was her direct supervisor and the more senior employee responsible for overseeing aspects of her work. Jung was her team leader. Their positions gave them influence over Plaintiff's duties, assignments, work environment, and professional standing.

21. Jung made gender-based comments concerning Plaintiff's engineering work, including statements to the effect that the Activation area was easier and therefore suitable for women. On or about February 13, 2025, during a social gathering, Jung further remarked that he had expected Plaintiff to quit relatively quickly because she was a woman and because the work was demanding. Plaintiff understood these remarks as reflecting a gender-based stereotype about her ability to perform engineering work.

*June 3, 2025 Unwanted Contact*

22. On or about June 3, 2025, Plaintiff attended an after-work team dinner with Park and other colleagues. After the others dispersed, Park encouraged her to accompany him to a second location, and later accompanied her to a deck or common area near her apartment complex.

23. While alone with Plaintiff in that area, Park moved close to her and attempted to kiss her without consent. He engaged in unwelcome physical contact despite her expressed refusal and attempted to pressure her to reciprocate his advances.

24. Park told her, in substance, that he was restraining himself, that she needed to "take responsibility," and that she had caused his previously suppressed feelings or behavior to surface. These statements shifted responsibility to Plaintiff for Park's unwanted conduct and intensified the pressure she experienced.

25. Plaintiff unequivocally rejected Park's sexual advances. When Park subsequently attempted to accompany or enter her residence, she prevented him from doing so. His conduct caused her immediate distress and fear.

26. On or about June 6, 2025, while the events were fresh in her memory, Plaintiff disclosed the unwanted incident to a trusted coworker.

*Repeated Pursuit and Workplace Hostility*

27. From approximately June through mid-July 2025, Park continued to pursue Plaintiff notwithstanding her rejection. He commented on her appearance, sought opportunities to be alone with her at work and after work, followed her vehicle toward her home on multiple occasions, waited near her residence, and repeatedly sought further physical closeness or attempted kisses, including approaching her near the elevator and entrance to her apartment and attempting to accompany her into her residence despite her repeated objections.

28. Park also pressured her emotionally, questioning why she would not accept his interest and suggesting, in substance, that she was responsible for his distress or should reconsider her rejection.

29. Park's conduct near Plaintiff's apartment, vehicle, and entryway was unwanted, intrusive, and intimidating. Plaintiff feared that she might encounter him both at work and near her home, and her sense of safety was substantially impaired.

30. Although Park's overt sexual advances and unwanted physical pursuit largely subsided by approximately July 11, 2025, he thereafter treated Plaintiff with open hostility at work. From approximately July through September 2025, he was uncooperative in work-related matters, criticized or treated her adversely in meetings, and sometimes intervened in

technical matters without coordinating with her, impairing her ability to perform her assigned work. Park's hostility was particularly apparent during visits by headquarters personnel, when he made hostile remarks toward Plaintiff and engaged in conduct that further undermined her ability to perform her work and maintain professional relationships with colleagues.

31. Jung, who worked closely with Park, likewise made negative comments about Plaintiff's attitude and performance to others. Plaintiff learned that Jung had said, in substance, that she had changed, had problems, was disengaged, or was not doing her work. She regarded these characterizations as inaccurate and professionally damaging.

32. Plaintiff also was subjected to increased scrutiny and ancillary work assignments without adequate explanation. These developments followed her rejection of Park's sexual advances and affected her ability to work in the team without apprehension or hostility.

*September 2025 Reassignment and Complaints to Management*

33. At approximately 8:30 a.m. on or about September 16, 2025, Jung informed Plaintiff that she would be reassigned from Activation equipment, where she had worked for over a year, to the Assembly/DNC area on very short notice, with an accelerated handoff of her existing work.

34. Plaintiff had invested substantial time in developing expertise in the Activation area. The abrupt reassignment removed her from established technical responsibilities and imposed a materially different set of duties without advance discussion or a meaningful explanation. Based on the surrounding statements and conduct, Plaintiff believed that the decision was affected by sex-based stereotyping and the deterioration in her relationship with Park after she rejected his sexual advances.

35. Later that morning, at approximately 9:00 a.m., Plaintiff met with Jung and disclosed the unwanted advances and physical contact by Park, as well as the mistreatment she had experienced. Jung minimized the seriousness of her account, stating words to the effect that Park had not done anything "too terrible," and repeated criticisms of Plaintiff's performance.

36. Later that day, Jung discussed Plaintiff negatively with another employee, who subsequently relayed the comments to her. That evening, Park telephoned Plaintiff outside working hours and sought a private meeting about the situation. She refused.

37. On or about September 17, 2025, Plaintiff reported Park's after-hours request to Jung through a message, explaining that she regarded such a personal meeting as inappropriate. Jung acknowledged the message without providing meaningful follow-up.

38. On or about September 18, 2025, Jung made additional negative statements about Plaintiff's work and performance to a coworker at an informal gathering. The coworker and another employee later communicated those statements to Plaintiff.

39. On or about September 19, 2025, Plaintiff sought assistance from department head Junhong Min. She described workplace mistreatment, an incident she was not yet ready to describe in full, and her inability to remain productively in the team. She requested a transfer and became visibly distressed during the meeting.

40. On or about September 22, 2025, after learning of Plaintiff's discussion with Min, Jung publicly questioned her about what she had told senior management. He subsequently called her into a separate meeting, challenged her complaints, and reiterated that she was not performing satisfactorily while resisting her requested transfer. Later that day, Min followed up with Plaintiff regarding Jung's response. Plaintiff explained that Jung had

not apologized and had instead continued criticizing her work performance. Min expressed regret over the situation, but no meaningful corrective action was taken at that time.

41. On or about September 26, 2025, Plaintiff formally emailed HR team leader Sabrina Vasher requesting transfer assistance. She described repeated disparaging statements, inconsistent accounts about her, inappropriate pressure from leadership, and an environment in which she could no longer work effectively under Jung and Park. She expressly stated that she sought HR assistance not merely for a transfer but also because of repeated inappropriate leadership conduct.

42. Plaintiff followed up on her September 26 email on September 29. HR thereafter arranged meetings with her, and she continued to pursue updates rather than abandoning her report.

*HR Investigation, Transfer, and November 2025 Communications*

43. HR met or communicated with Plaintiff on or about September 30 and October 6, 2025. During the process, Plaintiff provided progressively fuller details concerning Park's sexual conduct and her workplace treatment. By October 6, HR understood that her concerns included sexual misconduct.

44. On October 13 and 14, 2025, Plaintiff asked HR for updates concerning her report and the Company's response. Her follow-up communications reflected her continuing interest in a resolution.

45. After Plaintiff repeatedly sought updates without receiving a substantive response, she approached Vasher on or about October 16, 2025, and was referred to HR representative Jaeho Lee. During their initial conversation, Lee indicated that he had been informed that equipment work was not suitable for Plaintiff. Plaintiff expressly disputed that

characterization, explaining that her concerns arose from the mistreatment she had experienced rather than dissatisfaction with her engineering duties. A more detailed meeting was arranged for the following day.

46. On or about October 17, 2025, Plaintiff provided further details to HR representative Jaeho Lee and requested that the matter be handled confidentially and without retaliation. She was assured that she would not suffer retaliation and that preventive steps would be taken.

47. Despite Plaintiff's express request for confidentiality, Lee disclosed information concerning her complaint to Min on or about October 17, 2025. Min subsequently discussed the matter with other employees, including Yeonsu Kim and Eunji Kim. Plaintiff learned of those communications through the employees involved and became concerned that information concerning her highly sensitive complaint was being disseminated beyond those reasonably necessary to address it. Plaintiff alleges that these disclosures, particularly in light of the assurances she had received from HR, caused additional distress and undermined her confidence in the Company's investigation and corrective process.

48. On or about October 24, 2025, Plaintiff wrote to Lee following their meeting that day to confirm her understanding that the Company would protect her against retaliation and arrange preventive training for relevant employees or managers. Lee responded on or about October 29, 2025, stating that she would not suffer disadvantage or retaliation from the Company and that separate training was planned.

49. Although Plaintiff had requested transfer assistance in September, her transfer from the Cell Equipment Technology Team to the Quality Team became effective on or about October 27, 2025. She had remained in the environment about which she complained during the intervening period.

50. On or about October 27, 2025, Lee sent Plaintiff a form requesting her agreement to close the investigation. The form characterized the matter as one that could not be investigated further because Plaintiff declined additional participation or investigation.

51. On or about November 3, 2025, HR again requested her signature. On or about November 4, 2025, Plaintiff explained in writing that she did not intend to indicate that she was refusing to cooperate with the investigation. Instead, she understood that closure would be conditioned on preventive training, measures against recurrence, and assurances against retaliation. She requested accurate wording reflecting that understanding and clarification that any subsequent request for additional investigation would be reviewed through appropriate procedures.

52. On or about November 10, 2025, Lee transmitted a revised form and sought Plaintiff's response. Although the revised form reflected some of her requested language, it continued to state in its investigation-results section that further investigation could not proceed because she had refused additional investigation.

53. On or about November 18, 2025, Lee reminded Plaintiff to submit the signed form that day. Plaintiff again explained that it contained statements inconsistent with the facts and that she could not sign unless the wording was corrected.

54. Later that day, Lee responded that she could send her proposed language for review by the Company's North American Ethics Department. Plaintiff did not sign the disputed document.

55. Plaintiff alleges that the Company's repeated demands that she sign a form she believed mischaracterized her cooperation, together with its handling of her complaint, caused additional distress and formed part of a continuing course of retaliatory treatment following her reports of sexual harassment.

*Resulting Harm*

56. Following the events described above, Plaintiff sought other employment opportunities and ultimately left HLBMA. As a result of Defendants' conduct described above, Plaintiff experienced severe emotional and psychological distress, including anxiety, panic symptoms, fear, sleep disturbances, impaired concentration, and difficulty functioning in her daily and professional life.

57. Plaintiff also developed significant physical symptoms associated with her distress, including loss of appetite, persistent nausea, vomiting, gastrointestinal disturbances, chest tightness, fatigue, and substantial weight loss. These symptoms interfered with her health, daily activities, and ability to work effectively.

58. Plaintiff sought medical evaluation, psychological counseling, psychiatric care, and other treatment for the emotional and physical conditions she experienced. Despite receiving treatment, Plaintiff continued to experience symptoms that affected her emotional well-being, physical health, and daily functioning.

59. As a result of the foregoing conduct, Plaintiff has suffered substantial emotional distress, physical pain and suffering, medical and treatment expenses, loss of enjoyment of life, and other economic and non-economic damages in amounts to be established at trial.

## COUNT I
## TITLE VII 42 U.S.C. § 2000e-2(a)(1)
## Sexual Harassment and Hostile Work Environment Against HLBMA

60. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

61. Park's repeated sexual advances, attempts to kiss Plaintiff against her wishes, unwelcome physical contact, comments about her appearance, pursuit near her home, and

ensuing hostility were unwelcome and occurred because of Plaintiff's sex and her rejection of his sexual interest.

62. The severity, threatening nature, repetition, supervisory power imbalance, and effect of the conduct on Plaintiff's ability to function at work were sufficient to alter the terms and conditions of her employment and create a subjectively and objectively hostile work environment.

63. Park exercised direct supervisory authority over Plaintiff. The Company also received actual notice of the alleged harassment and its effects through management and HR, but failed to take sufficiently prompt and effective corrective action under the circumstances.

64. HLBMA is liable for the hostile environment under applicable principles of Title VII employer liability, including vicarious liability for harassment by a supervisor with authority to take tangible employment actions and, alternatively, liability arising from the Company's actual knowledge of the harassment and its failure to take prompt and effective corrective action.

65. As a direct and proximate result of HLBMA's discriminatory and harassing conduct, Plaintiff suffered substantial emotional distress, physical and psychological injuries, medical and treatment expenses, and other damages recoverable under Title VII.

## COUNT II
## TITLE VII 42 U.S.C. § 2000e-2(a)(1)
## Sex Discrimination Against HLBMA

66. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

67. Plaintiff was qualified for her engineering position and had developed specialized knowledge in her assigned Activation equipment area. In February 2025, her team

leader expressed a stereotyped expectation that Plaintiff would not remain in the position because she was a woman.

68. After Plaintiff rejected Park's sexual advances, she was subjected to hostile treatment affecting her job duties, increased scrutiny, criticism, and an abrupt reassignment on September 16, 2025, from her established Activation responsibilities to Assembly/DNC duties on minimal notice.

69. The reassignment involved a disadvantageous change in Plaintiff's work responsibilities and professional opportunities, including the loss of her established technical responsibilities in the Activation area and the opportunity to continue developing her specialized experience. Plaintiff alleges that sex-based stereotyping and her rejection of her supervisor's sexual advances were motivating factors in the treatment described herein.

70. HLBMA thereby discriminated against Plaintiff with respect to the terms, conditions, or privileges of employment because of sex. As a direct and proximate result of HLBMA's unlawful discrimination, Plaintiff suffered emotional distress, professional harm, and other damages recoverable under Title VII.

## <u>COUNT III</u>
## TITLE VII 42 U.S.C. § 2000e-3(a)
## Retaliation Against HLBMA

71. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

72. Plaintiff engaged in activity protected by Title VII when she reported Park's alleged sexual misconduct and workplace discrimination to Jung on September 16, 2025, and subsequently communicated her concerns to senior management and HR, including during October 2025 HR meetings.

73. Following those reports, HLBMA, through its supervisors and personnel, subjected Plaintiff to a course of adverse treatment, including dissemination of negative statements about her work, hostile questioning about her complaints, inadequate protection of the confidentiality of her report, and repeated requests in November 2025 that she sign an investigation-closure form describing her as unwilling to participate despite her written objections.

74. Plaintiff alleges that, considered individually where actionable and cumulatively as retaliatory harassment, the conduct after her protected reports would have dissuaded a reasonable employee from making or supporting a discrimination complaint. HLBMA's knowledge of her reports, the close temporal relationship, and the circumstances of the challenged conduct support an inference of retaliatory causation.

75. Plaintiff alleges that HLBMA subjected her to this treatment because she opposed and reported the unlawful conduct, and that she would not have experienced such treatment but for her protected complaints.

76. As a direct and proximate result of HLBMA's retaliatory conduct, Plaintiff suffered emotional distress, humiliation, anxiety, and other damages recoverable under Title VII.

## COUNT IV
## GEORGIA COMMON LAW
## Battery Against Park

77. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

78. On or about June 3, 2025, Park intentionally initiated offensive physical contact with Plaintiff during an unwanted sexual advance at or near her apartment complex, without

her consent and despite her stated rejection. He continued to initiate or attempt unwanted physical closeness and contact on other occasions in June and July 2025.

79. Park's intentional and nonconsensual touching constituted battery under Georgia law.

80. Park acted willfully, maliciously, or with conscious disregard of Plaintiff's rights, warranting damages as permitted by Georgia law.

81. As a direct and proximate result of Park's intentional and unauthorized physical contact, Plaintiff suffered fear, humiliation, emotional distress, physical and psychological injuries, and other compensable damages.

**COUNT V**
**GEORGIA COMMON LAW**
**Assault Against Park**

82. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

83. Park intentionally moved toward Plaintiff, attempted to kiss or touch her against her expressed wishes, sought access to her residence despite her refusal, and on repeated occasions approached or followed her in circumstances that placed her in reasonable apprehension of immediate unwanted bodily contact.

84. Park's intentional conduct constituted assault under Georgia law.

85. Park acted deliberately and with disregard for Plaintiff's clear refusals and personal security.

86. As a direct and proximate result of Park's assaultive conduct, Plaintiff suffered fear, anxiety, emotional distress, and other compensable injuries and damages.

**COUNT VI**

**GEORGIA COMMON LAW**
**Intrusion Upon Seclusion Against Park**

87. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

88. Park repeatedly followed Plaintiff's vehicle or accompanied her toward her home, appeared or waited near her apartment, approached her at her residential complex and entryway, and continued unwanted efforts to obtain intimate access to her despite her objections.

89. Viewed in their totality, Park's repeated, intentional acts constituted an unreasonable and highly offensive intrusion into Plaintiff's private life and solitude, including the area surrounding her home, that a reasonable person would find objectionable.

90. Park's intrusions caused Plaintiff to fear being followed or approached at home and substantially interfered with her sense of privacy and personal security.

91. As a direct and proximate result of Park's intentional intrusion into her private life and solitude, Plaintiff suffered fear, humiliation, emotional distress, loss of personal security, and other compensable damages.

**COUNT VII**
**GEORGIA COMMON LAW**
**Intentional Infliction of Emotional Distress Against Park**

92. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

93. Park's conduct, including coercive attempted kissing and touching, repeated pursuit of Plaintiff near her residence after she had expressly refused him, abuse of a supervisory power imbalance, emotional pressure, and later workplace hostility, was extreme and outrageous under the circumstances.

94. Park intentionally or recklessly caused Plaintiff severe emotional distress, or acted with conscious disregard of the substantial likelihood that his conduct would cause such distress.

95. Plaintiff experienced severe anxiety, fear, sleep disturbance, persistent distress, gastrointestinal symptoms and other serious effects requiring professional treatment. Park's conduct was a proximate cause of those injuries.

96. Park's conduct was willful, malicious, and undertaken with conscious indifference to the consequences of his actions, warranting punitive damages under O.C.G.A. § 51-12-5.1 to the extent established by the evidence.

97. As a direct and proximate result of Park's extreme and outrageous conduct, Plaintiff suffered severe emotional distress, psychological injuries, physical manifestations of distress, medical and treatment expenses, and other compensable damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, as applicable, and grant the following relief:

A. Declaring that HLBMA's unlawful conduct violated Title VII, to the extent established;

B. Ordering appropriate injunctive and equitable relief, including effective anti-harassment and anti-retaliation measures, correction of materially inaccurate internal records where appropriate, and other relief justified by the evidence;

C. Awarding compensatory damages for emotional distress, physical manifestations of distress, medical and counseling expenses, and other proven losses, subject to applicable law;

D. Awarding damages for any proven economic loss and appropriate equitable monetary relief, including back pay or front pay to the extent established by the evidence and authorized by law;

E. Awarding punitive damages against HLBMA to the extent permitted by Title VII and against Park on the Georgia tort claims pursuant to O.C.G.A. § 51-12-5.1, without duplicative recovery;

F. Awarding Plaintiff reasonable attorneys' fees, expenses, and costs against HLBMA pursuant to 42 U.S.C. § 2000e-5(k), together with any additional fees or expenses recoverable under applicable law;

G. Awarding pre-judgment and post-judgment interest to the extent permitted by law; and

H. Granting such other and further legal or equitable relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: November 20, 2026

/s/ Jesse Centrella
Jesse Centrella, Esq.
Centrella Law Firm, LLC
1305 Barnard St. #764

Savannah, GA 31401
912) 228-9534
jesse@centrellalaw.com
*Local Attorney for Plaintiff*